IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SEAN A. MAUZE, an individual,

           Plaintiff,

       v.

GE VERNOVA INC., a Foreign Business
Corporation; GE VERNOVA
INTERNATIONAL LLC, A Foreign Limited
Liability Corporation; and GENERAL
ELECTRIC COMPANY, a Foreign Business
Corporation,

           Defendants.

Case No. 6:24-cv-01800-MC

OPINION AND ORDER

_____

MCSHANE, Judge:

      Plaintiff brings claims against his former employer for retaliation, blacklisting, and intentional interference with economic relations ("IIER") arising out of Defendants' termination of Plaintiff's employment. Defendants move to dismiss Plaintiff's Complaint under Fed R. Civ. P. 12(b)(6). For the reasons discussed below, Defendants' Motion to Dismiss, ECF No. 16, is GRANTED in part and DENIED in part.

## **BACKGROUND**[1]

      Defendants are business entities that operate in the renewable wind energy industry. Compl. ¶ 7, ECF No. 1. Defendant General Electric Company is the parent company of Defendants

---

[1] At the motion to dismiss stage, the Court takes as true the factual allegations in Plaintiff's Complaint. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000)

GE Vernova Inc. and GE Vernova International, LLC, which remain under General Electric Company's direction and control (collectively, "GE"). *Id.* at ¶¶ 8–9.

GE employed Plaintiff Sean A. Mauze from 2010 until May 1, 2024. *Id.* at ¶ 19. Plaintiff was an Oregon resident at all material times. *Id.* at ¶ 1. During Plaintiff's employment, GE assigned Plaintiff to work on wind farms in various states. *Id.* at ¶ 22. Plaintiff received numerous positive performance reviews and never received any form of discipline until the events in question. *Id.* at ¶ 23.

Wind energy is produced by turbines with three large blades. *Id.* at ¶ 10. GE determined that some turbine blades were improperly made and needed to be replaced. *Id.* at ¶¶ 12–13. In early 2024, GE assigned Plaintiff to lead a team to replace blades at a New Mexico wind farm called Border Lands. *Id.* at ¶¶ 25, 26. In March 2024, Plaintiff traveled from his home in Oregon to New Mexico to begin that work. *Id.*

To replace a turbine blade, standard practice required the costly use of two cranes. *Id.* at ¶ 27. For the Border Lands project, GE decided to instead use an "SBI Tool" to assist with blade replacement, eliminating the need for one of the cranes. *Id.* at ¶¶ 28–29. The SBI Tool had never been used to replace existing blades, and Plaintiff and his team were not familiar with the SBI tool. *Id.* at ¶¶ 28, 30. In February 2024, Plaintiff and his team were trained on the SBI Tool, but Plaintiff later learned that he was given incorrect information during that training. *Id.* at ¶ 31. Plaintiff noticed and reported safety concerns to his superiors regarding use of the SBI Tool, including leaking hoses and parts that were bent, mislabeled, and held together using zip ties. *Id.* at ¶ 32.

At the Border Lands site on March 9, 2024, Plaintiff and his team began replacing a blade using the SBI Tool. *Id.* at ¶ 33. The blade cracked and a large portion of the blade hung 300 feet above the ground. *Id.* at ¶ 34. Plaintiff halted the project and notified management. *Id.* Plaintiff

and his team then removed the dangling blade and began replacing the other two blades using two cranes, but another blade cracked. *Id.* at ¶ 36. Plaintiff met multiple times with his superiors and reported numerous safety concerns during that time. *Id.* at ¶ 37.

Plaintiff was later informed that GE was investigating the Border Lands incident. *Id.* at ¶ 39. On or about April 19, 2024, Plaintiff met with his manager, Client Lackey, and GE Human Resources manager Nicole Moskow, who explained that GE faulted "human error" for the Border Lands incident. *Id.* at ¶ 40. Someone claimed that Plaintiff and his team had failed to perform a necessary "Lock Out Tag Out" procedure. *Id.*

On April 21, 2024, Plaintiff emailed Human Resources and his supervisors to reiterate his concerns about the safety risks of using the SBI Tool and the hazardous, ill-manufactured blades. *Id.* at ¶ 41. On May 1, 2024, Plaintiff was informed that his employment with GE was going to be terminated. *Id.* at ¶ 43.

The next month, Plaintiff found employment with one of GE's competitors, Clean Energy Services, Inc. ("CES"), doing the same work he did for GE. *Id.* at ¶¶ 44–45. Plaintiff's new position paid more, reduced his travel requirements, and offered more opportunities. *Id.* at ¶ 48. As part of his work with CES, Plaintiff was expected to work on wind farms managed by GE. *Id.* at ¶ 49.

In July of 2024, Plaintiff was preparing to travel to work for CES when the CEO of CES called Plaintiff. *Id.* at ¶¶ 49–50. Plaintiff was informed that GE's senior manager, Jamie Bosivert, told CES that Plaintiff was banned from working at any GE site, including the site he was heading out to work on at that time. *Id.* at ¶ 50. This was the first time Plaintiff was informed of any prohibition against him working on GE sites. *Id.* CES was forced to terminate Plaintiff's employment because of GE's ban against Plaintiff working on GE-managed wind farms. *Id.* at ¶ 54. Despite Plaintiff's requests, GE has never provided him with the results of the Border Lands

investigation, an explanation of GE's ban, or a copy of his employment file as required by Oregon law. *Id.* at ¶¶ 42, 53, 58.

Plaintiff has since taken another position with an energy company based in Florida. *Id.* at ¶ 57. Plaintiff's new job requires him to take a pay cut, relocate, and work night shifts. *Id.*

In October 2024, Plaintiff filed his Complaint alleging that GE terminated him in violation of whistleblower protection laws, illegally blacklisted him from future work, and intentionally interfered with economic relations between Plaintiff and CES. *Id.* at ¶¶ 60–82. Plaintiff seeks economic and non-economic damages, punitive damages, and injunctive relief. *Id.* at ¶ 90.

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendants move to dismiss Plaintiff's Complaint in its entirety. Each of Defendants' arguments is discussed below.

## I.    Plaintiff's Whistleblower Claim

Plaintiff alleges a claim for retaliation under Oregon's whistleblower protection statute. That law makes it unlawful "for an employer to discharge . . . or in any manner discriminate or

retaliate against an employee . . . for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation." ORS § 659A.199(1)

Defendants argue that ORS § 659A.199(1) does not apply to them because none of the allegedly retaliatory conduct occurred in Oregon, and courts construe Oregon laws to prohibit their extraterritorial application. "'The threshold question in a choice-of-law problem is whether the laws of the different states actually conflict.' The proponent of applying a different state's law has the obligation to identify a material difference between Oregon law and the law of the other state." *Portfolio Recovery Assocs., LLC v. Sanders*, 292 Or. App. 463, 467–68 (2018) (internal citation omitted). Although Defendants attempt to evade liability under Oregon law, they have not identified which law should apply, much less whether there are any differences between those laws. This is fatal to their argument. *Meyer v. Mittal*, No. 21-cv-00621, 2024 WL 385129, at *35 (D. Or. Feb. 1, 2024) ("Defendants failed to identify which substantive law should govern or explain how it differs materially from Oregon law. They have thus failed to meet the threshold requirement to show that Oregon law should not apply."). Defendants' Motion is DENIED as to Plaintiff's retaliation claim.

## II.    Plaintiff's Blacklisting Claim

Plaintiff's next claim arises under ORS § 659.805, which provides that businesses may not "blacklist or publish" an employee they discharged "with intent and for the purpose of preventing such employee . . . from engaging in or securing similar or other employment[.]" Defendants argue that the blacklisting statute is a criminal law that does not provide a private cause of action.

"Statutory liability arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty." *Doyle v. City of Medford*, 356 Or. 336, 345 (2014).

When the legislature does not expressly impose civil liability, courts look to whether the legislature intended to do so by considering (1) whether the statute refers to civil liability and (2) whether the statute provides no remedy so that the only possible remedy must be implied or created by the court. *Id.* at 345–46.

Defendants are correct that ORS §659.805 is a criminal statute that provides no private cause of action for Plaintiff. The statute makes no reference to civil liability and instead provides a remedy through the criminal justice system. *See* ORS § 659.990(2) ("Violation of ORS 659.805 . . . is a Class C misdemeanor."). While Plaintiff can point to cases in which a violation of ORS § 659.805 survived as a civil claim, the Court sees nothing in the statute that indicates the legislature intended to create a private right of action for blacklisting. To the contrary, the legislature provided that violations are criminal in nature and, despite having the opportunity to do so, provided no other method of relief. Defendants' Motion to Dismiss Plaintiff's blacklisting claim is GRANTED.

### III.    **Plaintiff's IIER Claim**

Plaintiff alleges that Defendants improperly interfered with his employment relationship with CES by prohibiting him from working on GE-managed or operated wind farms. Defendants first ask the Court to consider extrinsic evidence to defeat Plaintiff's claim, and then argue that Plaintiff's Complaint is insufficient on its face.

### a.    **Whether to Incorporate Extrinsic Evidence**

Defendants fail to establish that their extrinsic evidence should be considered at this early stage in the litigation. Defendants argue that Plaintiff's IIER claim fails because he cannot prove that GE used improper means or had an improper purpose in preventing Plaintiff from working on GE-operated wind farms. Defendants point to a Master Services Agreement ("MSA"), attached as an exhibit to their Motion, between GE and CES in which CES agreed not to assign anyone who

was employed by GE in the last six months to work on GE-operated wind farms. Defendants argue that their conduct was consistent with their contractual relationship with CES and cannot amount to tortious interference. Defendants ask the Court to find that the MSA is incorporated by reference into the Complaint and appropriately considered under this Rule 12(b)(6) Motion. Alternatively, Defendants ask the Court to convert their motion into a Rule 56 summary judgment motion.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Incorporation-by-reference is an exception to this rule that applies to documents on which a complaint "necessarily relies" if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). This doctrine aims to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. But where a complaint does not rely on the document to state a claim, "[s]ubmitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint[.]" *Id.* at 1003.

Here, Plaintiff's Complaint neither mentioned nor alluded to the MSA, and it is certainly not central to Plaintiff's claims. Neither does Plaintiff concede the authenticity of the MSA. As Plaintiff notes, "GE does not and could not contend that Plaintiff had ever even seen this contract, or that he had any awareness or knowledge of its contents before he filed his Complaint." Pl.'s Resp. to Defs.' Mot. Dismiss 13, ECF No. 21; *see also* Compl. ¶¶ 52–53 (Plaintiff alleging that he inquired about the basis of the ban and Defendants refused to explain). Defendants seek to use the

MSA as a defense to Plaintiff's claims, but the MSA was not incorporated by reference because there was no reference.

In the alternative, Defendants ask the Court to convert their Motion into a motion for summary judgment so that the MSA may be considered. If the Court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). This case is only at the pleading stage and Defendants have delayed discovery efforts, so Plaintiff has not been "given a reasonable opportunity" to present pertinent material to the Court. *See* Defs.' Report of FRCP 26(f) Disc. Planning Conference 1–2 ("Defendants' position . . . is that all discovery should be stayed while Defendants' Rule 12(b)(6) Motion to Dismiss is pending."). Accordingly, the Court declines to convert Defendants' Motion into a Rule 56 motion and analyzes Plaintiff's IIER claim under the Rule 12(b)(6) standard below.

### b.    Whether Plaintiff Stated a Claim for IIER

Plaintiff has properly pled a claim for intentional interference with economic relations. To state a claim for IIER, Plaintiff must allege: (1) a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) through improper means or for an improper purpose; (5) causation between the interference and harm to the relationship; and (6) damages. *McGanty v. Staudenraus*, 321 Or. 532, 535 (1995).

Here, Plaintiff alleges that he had a professional relationship with CES as his employer, and that GE intentionally interfered with that relationship by banning Plaintiff from working on GE sites. Compl. ¶¶ 45, 50, 77. Plaintiff alleges that Defendants used improper means by engaging in unlawful blacklisting and imposing a de facto non-competition agreement on Plaintiff. *Id.* at ¶¶ 78–79. Plaintiff also alleges that CES was in direct competition with GE, and that employees with Plaintiff's skills "are in short supply in the labor market," so eliminating Plaintiff from CES's team

handicapped CES's ability to compete with GE. *Id.* at ¶¶ 18, 46. Finally, Plaintiff alleges that GE's interference caused CES to terminate Plaintiff's employment and resulted in damages. *Id.* at ¶¶ 54, 82. Defendants' Motion to Dismiss Plaintiff's IIER claim is DENIED.

**IV.**    **Plaintiff's Vicarious Liability & Injunctive Relief Claims**

Defendants also move to dismiss Plaintiffs' claims for vicarious liability and injunctive relief. Defendants are correct that those claims are more accurately categorized as a theory of liability and a desired remedy, not independent causes of action. Defendants' Motion is GRANTED as to those claims.

## CONCLUSION

Defendants' Motion to Dismiss, ECF No. 16, is DENIED in part and GRANTED in part. Plaintiff is permitted to file an amended complaint within 30 days of this order.

IT IS SO ORDERED.

DATED this 17th day of April 2025.


_____s/Michael J. McShane_____
Michael J. McShane
United States District Judge